1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10

11  RICHARD P. BRANDL,              )  Case No. CV 11-7719-SP
                                    )
12                Plaintiff,        )
                                    )
13        v.                        )  MEMORANDUM OPINION AND
                                    )  ORDER
14                                  )
    MICHAEL J. ASTRUE,              )
15  Commissioner of Social Security )
    Administration,                 )
16                                  )
                  Defendant.        )
17                                  )
    _____)
18

19                              **I.**

20                        **INTRODUCTION**

21        On September 16, 2011, plaintiff Richard P. Brandl filed a complaint

22  against defendant Michael J. Astrue, seeking a review of a denial of a period of

23  disability and disability insurance benefits ("DIB").  Both plaintiff and defendant

24  have consented to proceed for all purposes before the assigned Magistrate Judge

25  pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for

26  adjudication without oral argument.

27        Plaintiff presents four disputed issues for decision:  (1) whether the

28

                                 1

Administrative Law Judge ("ALJ") properly rejected the opinion of Dr. Leigh Anne Selby; (2) whether the ALJ properly considered the Veterans Administration's ("VA") disability rating; (3) whether the ALJ properly determined plaintiff's residual functional capacity ("RFC"); and (4) whether the ALJ properly discounted plaintiff's credibility.[1]  Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 4-12; Defendant's Answer ("Answer") at 2-10.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ:  improperly rejected the opinion of plaintiff's treating physician without providing specific and legitimate reasons supported by substantial evidence for doing so; failed to properly consider the VA's disability determination; made an RFC determination that was inconsistent with her analysis; and improperly discounted plaintiff's credibility.  Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was sixty-four years old on the date of his December 4, 2008 administrative hearing, is a college graduate.  AR at 121, 141, 1189.  His past relevant work was as a paraeducator/teacher's assistant at a continuation high school.  *Id.* at 137, 178.

---

[1]   Plaintiff also contends that the ALJ improperly determined that he did not have a severe mental impairment.  Pl. Mem. at 5.  This issue is incorporated into two of the issues referenced above:  whether the ALJ properly considered a treating physician's opinion and whether the ALJ properly considered the VA's disability rating.

2

1    On November 17, 2004, plaintiff filed an application for a period of

2    disability and DIB due to derangement of the right knee and right fourth

3    metatarsal, right shoulder impingement syndrome, pancreatitis, diabetes, and post-

4    traumatic stress disorder ("PTSD").[2]  *Id.* at 121-23, 136-37, 143.  The

5    Commissioner denied plaintiff's application initially and upon reconsideration,

6    after which he filed a request for a hearing.  *Id.* at 78-82, 86-91.

7    On February 15, 2007, plaintiff, represented by counsel, appeared and

8    testified at a hearing before the ALJ.  *Id.* at 1156-88.  The ALJ also heard

9    testimony from Sharon Spaventa, a vocational expert.  *Id.* at 1181-87.  On March

10   1, 2007, the ALJ denied plaintiff's claim for benefits (the "2007 Decision").  *Id.* at

11   53-61.

12   Plaintiff requested a review of the decision by the Appeals Council.  *Id.* at

13   93.  On February 15, 2008, the Appeals Council vacated the 2007 Decision and

14   remanded the case.  *Id.* at 107-09.  The Appeals Council ordered the ALJ to:  (1)

15   define the term "prolonged" as used in the RFC determination and provide further

16   rationale in support of the limitations; (2) further develop the record by obtaining

17   the treatment notes of Dr. Larry Decker; (3) correct her finding regarding

18   plaintiff's insured status; and (4) if warranted, secure a vocational expert to clarify

19   the effect of plaintiff's limitations, identify appropriate jobs, and resolve any

20   conflicts with the Dictionary of Occupational Titles.  *Id.*

21   On December 4, 2008, plaintiff and Ms. Spaventa appeared and testified at

22   second hearing before the ALJ.  *Id.* at 1189-1210.  On March 4, 2009, the ALJ,

23   incorporating the summary of the evidence contained in the 2007 Decision, again

24   denied plaintiff's claim for benefits (the "2009 Decision").  *Id.* at 29-33.

25

26

27   [2]   Plaintiff also listed "prostate" as a reason for his alleged disability, but he

28   failed to state the actual prostate condition.  *See* AR at 136-37.

3

1  Applying the well-known five-step sequential evaluation process, the ALJ
2  found, at step one, that plaintiff did not engage in substantial gainful activity since
3  his alleged onset date of disability, August 15, 2003. *Id.* at 33.

4  At step two, the ALJ found that plaintiff suffered from the following severe
5  impairments:  recurrent pancreatitis with diabetes mellitus; degenerative disc
6  disease of the cervical, thoracic, and lumbar spine; benign cartilage endochroma of
7  the right knee; and right shoulder impingement. *Id.*

8  At step three, the ALJ found that plaintiff's impairments, whether
9  individually or in combination, did not meet or medically equal one of the listed
10  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the
11  "Listings").[3] *Id.* at 56.

12  The ALJ then assessed plaintiff's RFC[4] and determined that he had the RFC
13  to lift/carry fifty pounds occasionally and twenty-five pounds frequently, with the
14  following limitations:  occasionally bend, stoop, and drive motor vehicles; and
15  precluded from prolonged standing, running, jumping, kneeling, squatting,
16  working above shoulder level with the right upper extremity, breaking up fights
17  between students, and performing repetitive motions of the neck/head. *Id.* at 33.

18
19

20  [3]  The ALJ did not make a step three finding in the 2009 Decision.  Although
21  the ALJ did not expressly incorporate her prior step three finding in the 2009
22  Decision, neither side raised this as an issue.  Accordingly, this court will assume
23  that the ALJ intended to incorporate the step three finding from the 2007 Decision
     in the 2009 Decision.

24  [4]  Residual functional capacity is what a claimant can do despite existing
25  exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
27  evaluation, the ALJ must proceed to an intermediate step in which the ALJ
     assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
28  F.3d 1149, 1151 n.2 (9th Cir. 2007).

1    The ALJ also determined that plaintiff was slightly limited in his ability to deal

2    with work stress and to maintain attention and concentration.  *Id.*

3         The ALJ found, at step four, that plaintiff was capable of performing his

4    past relevant work as an "adult education teacher."  *Id.*  Consequently, the ALJ

5    concluded that plaintiff did not suffer from a disability as defined by the Social

6    Security Act.  *Id.*

7         Plaintiff filed a timely request for review of the ALJ's decision, which was

8    denied by the Appeals Council.  *Id.* at 9-11.  The ALJ's decision stands as the final

9    decision of the Commissioner.

10                                      **III.**

11                             **STANDARD OF REVIEW**

12        This court is empowered to review decisions by the Commissioner to deny

13   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

14   Administration must be upheld if they are free of legal error and supported by

15   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

16   (as amended).  But if the court determines that the ALJ's findings are based on

17   legal error or are not supported by substantial evidence in the record, the court

18   may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

19   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

20   1144, 1147 (9th Cir. 2001).

21        "Substantial evidence is more than a mere scintilla, but less than a

22   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

23   "relevant evidence which a reasonable person might accept as adequate to support

24   a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

25   F.3d at 459.  To determine whether substantial evidence supports the ALJ's

26   finding, the reviewing court must review the administrative record as a whole,

27   "weighing both the evidence that supports and the evidence that detracts from the

28

1  ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
2  affirmed simply by isolating a specific quantum of supporting evidence.'"
3  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
4  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing
5  the ALJ's decision, the reviewing court "'may not substitute its judgment for that
6  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
7  1992)).

**IV.**

**DISCUSSION**

**A.    The ALJ Failed to Provide Specific and Legitimate Reasons for**
       **Rejecting the Opinion of a Treating Physician**

Plaintiff argues that the ALJ improperly rejected the opinion of his treating
psychologist, Dr. Leigh Ann Selby.  Pl. Mem. at 6.  Specifically, plaintiff contends
that the ALJ's sole reason for rejecting Dr. Selby's opinion – that it was
inconsistent with plaintiff's daily activities – was not clear and convincing.  *Id.*
The court agrees.

In determining whether a claimant has a medically determinable
impairment, among the evidence the ALJ considers is medical evidence.  20
C.F.R. § 416.927(b).  In evaluating medical opinions, the regulations distinguish
among three types of physicians:  (1) treating physicians; (2) examining
physicians; and (3) non-examining physicians.[5]  20 C.F.R. § 416.927(c), (e);
*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  "Generally, a
treating physician's opinion carries more weight than an examining physician's,
and an examining physician's opinion carries more weight than a reviewing

---

[5]    Psychologists are considered acceptable medical sources whose opinions
are accorded the same weight as physicians.  20 C.F.R. § 416.913(a)(2).
Accordingly, for ease of reference, the court will refer to Dr. Selby as a physician.

1    physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20
2    C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally
3    given the greatest weight because the treating physician is employed to cure and
4    has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*,
5    80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th
6    Cir. 1989).

7          Nevertheless, the ALJ is not bound by the opinion of the treating physician.
8    *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the
9    ALJ must provide clear and convincing reasons for giving it less weight. *Lester*,
10   81 F.3d at 830. If the treating physician's opinion is contradicted by other
11   opinions, the ALJ must provide specific and legitimate reasons supported by
12   substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide
13   specific and legitimate reasons supported by substantial evidence in rejecting the
14   contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a
15   non-examining physician, standing alone, cannot constitute substantial evidence.
16   *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.
17   Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d
18   813, 818 n.7 (9th Cir. 1993).

19         **1.     Dr. Selby**
20         Dr. Selby, a psychologist at the VA, treated plaintiff from February 24, 2007
21   through at least November 5, 2008. AR at 1144. Dr. Selby diagnosed plaintiff
22   with PTSD. *See, e.g., id.* at 973. Plaintiff attended both individual and group
23   therapy sessions with Dr. Selby. *See, e.g., id.* at 970, 973. Dr. Selby's findings
24   included: plaintiff was a low suicide risk; he found group therapy helpful; he
25   struggled with thoughts and nightmares of his service during the Vietnam War;
26   and he struggled with anger issues. *See, e.g.*, *id.* at 916, 966, 973, 993, 1000.
27
28

7

1    In a letter dated November 5, 2008, which incorporated the information
2 required by the Mental Impairment Questionnaire, Dr. Selby diagnosed plaintiff
3 with PTSD and a current Global Assessment of Functioning ("GAF") score of 62.[6]
4 *Id.* at 1144-46.  Dr. Selby opined that plaintiff would have a poor or fair to poor
5 ability to:  maintain attention for two hours; work in proximity to others and
6 coordinate with them; perform at a consistent pace with reasonable rest periods;
7 respond to criticism depending on the supervisor's attitude and tone of voice or
8 reasonableness; get along with coworkers without distracting them; and deal with
9 normal work stress.  *Id.* at 1145.  Dr. Selby based her opinion on plaintiff's
10 descriptions of daily personal interactions and her own observations.  *Id.*

11        **2.     Other Treating, Examining, and State Agency Physicians**
12       Several other physicians offered opinions as to plaintiff's alleged mental
13 impairment.

14       Dr. Larry Decker of the Vet Center treated plaintiff from October 29, 2003
15 through April 16, 2007.  *Id.* at 841, 879.  In a Mental Impairment Questionnaire
16 dated January 26, 2007, Dr. Decker opined that plaintiff had poor or no ability to
17 perform fourteen out of the sixteen functions listed in the Mental Abilities and
18 Aptitude Needed to Do Unskilled Work section and all four of the functions listed
19 in the Mental Abilities and Aptitude Needed to Do Semi-Skilled Work section.  *Id.*
20 at 834-39.  Dr. Decker diagnosed plaintiff with PTSD and a GAF rating of 45.[7]  *Id.*
21 at 834.

22

23    [6]    A GAF rating of 61-70 indicates "some mild symptoms [] OR some
24 difficulty in social, occupational, or school functioning [], but generally
25 functioning pretty well, has some meaningful interpersonal relationships."  Am.
   Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th
26 Ed. 2000) ("DSM").

27    [7]    A GAF score of 41-52 indicates "serious symptoms OR any serious
28 impairment in social, occupational, or school functioning."  DSM.

Dr. Jason H. Yang, a consultative psychiatrist, examined plaintiff on March 26, 2005. *Id.* at 475-79. Dr. Yang diagnosed plaintiff with depressive disorder, assigned a GAF score of 65, and did not opine any limitations. *Id.*

On April 29, 2005 and September 12, 2005, Dr. Archimedes Garcia and Dr. Glenn Ikawa, State Agency physicians, reviewed plaintiff's file and opined that he did not have a severe mental impairment. *Id.* at 490-93.

### 3.    The ALJ's Findings

The ALJ concluded that plaintiff had no severe mental impairment. In reaching that determination, the ALJ gave no weight to Dr. Decker on the basis that his opinion was inconsistent with the medical evidence, plaintiff's "demonstrated functional capacity," and the VA's disability determination. *Id.* at 30. The ALJ also gave minimal weight to the opinion of Dr. Selby because it was inconsistent with plaintiff's daily activities.[8] *Id.* at 31. Instead, the ALJ credited the opinion of Dr. Yang. *Id.* at 59. The ALJ erred because he failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Selby's opinion. *See Lester*, 81 F.3d at 830-31.

Although the ALJ gave no reason for discounting Dr. Selby's opinion apart from plaintiff's daily activities, arguably – since the ALJ stated she gave minimal weight to Dr. Selby and credited Dr. Yang – the ALJ implicitly indicated she credited Dr. Yang's opinion over that of Dr. Selby. But even if the court generously reads the ALJ's decisions to find the ALJ cited to Dr. Yang's findings as a reason for discounting Dr. Selby's opinion, it is not a legitimate reason supported by substantial evidence. On July 22, 2009, the California Department of Social Services terminated Dr. Yang's service as a consultative examiner due

---

[8]    Plaintiff also separately claims that the ALJ failed to discuss the VA's PTSD determination. Pl. Mem. at 5. Dr. Shelby is a VA psychiatrist and plaintiff's notes supporting this claim simply cite to Dr. Shelby's notes. *Id.* at 5-6.

to, inter alia, its discovery that he filed eleven reports which contained identical or nearly identical mental status examination findings.  Reply, Exh. 1.  Because the California Department of Social Services terminated Dr. Yang for performance and ethical reasons, the court finds that Dr. Yang's opinion lacks credibility, and therefore does not amount to substantial evidence.

As for the one reason the ALJ explicitly gave for discounting Dr. Selby's opinion, inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason for rejecting the opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  The mere ability to perform activities of daily living, however, is not a specific and legitimate reason.  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the ALJ noted that plaintiff could make breakfast, walk, do dishes, perform school and homework, garden, shop for groceries and clothes, and go out daily.  AR at 31.  The ALJ further noted that plaintiff independently read, visited family and friends, attended veterans' meeting, and church.  *Id.*

Plaintiff's ability to perform these daily activities of living was not a specific and legitimate reason for discounting Dr. Selby's opinion because these activities were not inconsistent with Dr. Selby's opined limitations.  Dr. Selby concluded, inter alia, that plaintiff would have difficulty maintaining his attention for two hours, working with others, performing at a consistent pace, and dealing with work stress.  *Id.* at 1145.  None of the daily activities cited by the ALJ exceed the opined limitations.

Accordingly, the ALJ failed to cite specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Selby.

1    **B.      The ALJ Failed to Properly Consider the VA's Disability**
2    **Determination**

3         Plaintiff claims that the ALJ failed to properly consider the VA's disability
4    determination.  Pl. Mem. at 7.  Specifically, plaintiff argues that the ALJ
5    misinterpreted the VA's finding.  *Id.*  The court agrees.

6         In social security disability cases, "a VA rating of disability does not
7    necessarily compel the [Commissioner] to reach an identical result, [but] the ALJ
8    must consider the VA's finding in reaching his decision."  *McCartey v.*
9    *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (internal citation omitted);
10   *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011).  Indeed, the "ALJ must
11   ordinarily give great weight to a VA determination of disability" because of the
12   "marked similarity" between the two disability programs.  *McCartey*, 298 F.3d at
13   1076.  The ALJ may give less weight to a VA disability rating but must provide
14   "persuasive, specific, valid reasons" supported by substantial evidence for doing
15   so.  *Id.*

16        On June 19, 2008, the VA issued a Statement of the Case where it
17   determined that plaintiff had a total seventy percent service connected disability
18   rating.  AR at 236-57.  The VA based its disability rating on a fifty percent
19   disability for PTSD, twenty percent disability for pancreatic insufficiency with
20   residual scar, twenty percent disability for diabetes mellitus, and ten percent
21   disability for mitrial valve prolapse and associated disability.[9]  *Id.* at 257.  The VA
22   found that plaintiff was not entitled to individual unemployability because if only
23   considering service connected conditions, he would be employable.  *Id.*  The VA,
24   however, considered plaintiff unemployable due to non-service connected factors.
25   *Id.*

26

27  _____

28        [9]   The VA disability rating is not a total of the percentages.  AR at 1195.

1    Here, in reaching her decision, the ALJ stated that she gave great weight to
2    the VA. *Id.* at 59.  The ALJ noted that a seventy percent disability rating does not
3    preclude work and the VA never found plaintiff unemployable. *Id.* at 31, 59-60.

4    The ALJ erred because she misconstrued the VA's disability determination.
5    The VA found plaintiff employable when considering *only* his service connected
6    conditions. *Id.* at 257.  The VA expressly stated that plaintiff was unemployable
7    due to non-service connected conditions. *Id.*

8    Accordingly, the ALJ failed to properly consider the VA's disability
9    determination.  The ALJ must consider the VA's determination and give it great
10   weight, or provide specific and valid reasons why it merits less weight.

11   **C.    The ALJ Must Clarify Plaintiff's RFC**

12   Plaintiff contends that the ALJ's RFC determination was inconsistent with
13   her evaluation of the evidence.  Pl. Mem. at 6.  Specifically, plaintiff notes that the
14   ALJ credited the opinion of Dr. Steven Nagelberg, but then reached a less
15   restrictive RFC than Dr. Nagelberg opined. *Id*. at 6-7.  The court agrees.

16   Dr. Nagelberg was plaintiff's treating orthopedic surgeon in 2003 and 2004.
17   AR at 259-321.  Dr. Nagelberg diagnosed plaintiff with chronic myofascial pain
18   and right shoulder impingement syndrome. *See* AR at 289.  On November 12,
19   2008, Dr. Nagelberg examined plaintiff and completed a Physical RFC
20   Questionnaire.  AR at 1147-53.  Dr. Nagelberg opined that plaintiff, in an eight-
21   hour day, had the RFC to:  lift/carry twenty pounds occasionally and ten pounds
22   frequently; continuously sit/stand for 45 minutes at a time with at least five
23   minutes needed for walking after that period; stand/walk for a total of two hours;
24   sit for at least six hours; bend and twist at the waist twenty-five percent of the
25   time; and engage in repetitive reaching on the left side fifty percent of the time.
26   *Id.*  In addition, Dr. Nagelberg opined that plaintiff would frequently experience
27   symptoms severe enough to interfere with attention and concentration and he was
28   moderately limited in his ability to deal with stress. *Id*. at 1149.

At the December 4, 2008 hearing, the ALJ posed multiple hypotheticals to the vocational expert, one of which was entirely consistent with Dr. Nagelberg's opinion. *Id.* at 1204-1207. When presented with limitations entirely consistent with Dr. Nagelberg's opinion, the vocational expert opined that plaintiff would not be able to perform his past relevant work or any other work. *Id.* at 1206.

Although the ALJ credited Dr. Nagelberg's assessment (*id.* at 31), she found that plaintiff had the RFC to: lift/carry fifty pounds occasionally and twenty-five pounds frequently; and occasionally bend, stoop, and drive motor vehicles. *Id.* at 33. The ALJ precluded plaintiff from prolonged standing, running, jumping, kneeling, squatting, working above shoulder level with the right upper extremity, breaking up fights between students, and performing repetitive motions of the neck/head. *Id.* The ALJ also found that plaintiff was "slightly limited in [his] ability to deal with work stress and to maintain attention and concentration." *Id.* This RFC determination was less restrictive than the one reached by Dr. Nagelberg.

Defendant argues that the ALJ's RFC determination was a harmless typographical error and the ALJ mistakenly copied the RFC determination from the 2007 Decision. Answer at 7. Defendant maintains that the ALJ's discussion of the vocational expert's testimony responding to a hypothetical which included most of Dr. Nagelberg's functional limitations is evidence that the ALJ intended to adopt Dr. Nagelberg's RFC determination and limitations. *Id.*; *see* AR at 32.

The court agrees that the ALJ may have simply made a typographical error, but regardless of whether the RFC determination was written as intended or was a typographical error, the ALJ erred. If the RFC determination under the Findings section in the 2009 Decision was the ALJ's intended conclusion, then it was inconsistent with the opinion of Dr. Nagelberg. The ALJ must provide specific and legitimate reasons for rejecting the opinion, which she expressly credited.

1      If, instead, the ALJ made a typographical error and her intended RFC

2    determination was the same as the one in the hypothetical she discussed in the

3    2009 Decision (*see* AR at 32), it was not harmless.  Although the vocational expert

4    found that plaintiff could perform his past relevant work as generally performed

5    under this more restrictive RFC, which suggests harmless error, it is not harmless

6    in this instance because there is still a conflict between Dr. Nagelberg's opinion

7    and the functional limitations in the hypothetical discussed in the 2009 Decision.

8    Dr. Nagelberg opined that plaintiff would be "moderately" limited in his ability to

9    deal with stress and "frequently" experience symptoms severe enough to interfere

10   with his attention and concentration.  *Id.* at 1149.  In contrast, the vocational

11   expert opined that plaintiff could perform his past relevant work if he had a "mild"

12   limitation in the ability deal with stress and maintain concentration and attention.

13   *Id.* at 32, 1206.  Thus, even if the intended RFC was the one discussed by the ALJ

14   in the 2009 Decision, it still deviated from the opinion of Dr. Nagelberg.  Further,

15   this deviation was material, since the vocational expert found plaintiff could not

16   perform any work when presented with all of Dr. Nagelberg's restrictions.  *See* AR

17   at 1206.  As such, the ALJ must provide specific and legitimate reasons for

18   rejecting Dr. Nagelberg's opinion, even if she intended to adopt the RFC

19   suggested by defendants.

20      Accordingly, the ALJ erred.  The ALJ needs to clarify her actual RFC

21   determination.  If the RFC determination is inconsistent with Dr. Nagelberg's

22   opinion, the ALJ must provide specific and legitimate reasons for rejecting the

23   limitations found by Dr. Nagelberg.

24   **D.    The ALJ Failed to Provide Clear and Convincing Reasons for**

25   **        Discounting Plaintiff's Subjective Complaints**

26      Plaintiff argues that the ALJ failed to make a proper credibility

27   determination.  Pl. Mem. at 8-12.  Specifically, plaintiff contends that the ALJ did

28

1   not provide clear and convincing reasons that are supported by substantial

2   evidence for discounting plaintiff's credibility.  *Id.*  This court agrees in part.

3         An ALJ must make specific credibility findings, supported by the record.

4   Social Security Ruling 96-7p.  To determine whether testimony concerning

5   symptoms is credible, an ALJ engages in a two-step analysis.  *Lingenfelter v.*

6   *Astrue*, 504 F.3d 1028, 1035-36  (9th Cir. 2007).  First, an ALJ must determine

7   whether a claimant produced objective medical evidence of an underlying

8   impairment "'which could reasonably be expected to produce the pain or other

9   symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

10  (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an

11  "ALJ can reject the claimant's testimony about the severity of her symptoms only

12  by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d

13  at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  An ALJ may

14  consider several factors in weighing a claimant's credibility, including: (1)

15  ordinary techniques of credibility evaluation such as a claimant's reputation for

16  lying; (2) the failure to seek treatment or follow a prescribed course of treatment;

17  and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039

18  (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

19        The ALJ did not expressly make a first step finding, but it is implied that

20  there was objective medical evidence of an underlying impairment which could

21  reasonably be expected to produce the symptoms alleged.  *Lingenfelter*, 504 F.3d

22  1036.  At the second step, because the ALJ did not find any evidence of

23  malingering, the ALJ was required to provide clear and convincing reasons for

24  discounting plaintiff's credibility.

25        Here, the ALJ found that  plaintiff's statements regarding his symptoms and

26  limitations were generally credible, but not to the extent alleged.  AR at 59.  The

27  ALJ provided three reasons for discounting plaintiff's credibility:  (1) the

28  objective medical evidence failed to fully support his claims; (2) plaintiff received

1    conservative treatment and his symptoms are managed by his medication; and (3)

2    his claims were inconsistent with his daily activities.[10]  *Id.* at 31, 58-60.  The

3    ALJ's reasons were not all clear and convincing reasons supported by substantial

4    evidence.

5         First, the ALJ noted that the medical evidence did not fully support

6    plaintiff's claims.  *Id.* at 58.  With respect to the physical symptoms and

7    limitations, the ALJ correctly stated that Dr. Nagelberg noted objective findings of

8    desiccated disc and degeneration at C6-7 (*id.* at 58, 321), cervical musculature (*id.*

9    at 58, 300), and subacromial impingement (*id.* at 58, 311), and no evidence of

10   evidence of acute lumbar radiculopathy, lumbar plexopathy, peripheral nerve

11   entrapment, or peripheral neuropathy (*id.* at 58, 308).  The ALJ later appeared to

12   adopt the physical limitations assessed by Dr. Nagelberg.  *Id.* at 30-31.  The ALJ

13   also noted that a consultative examiner made objective findings indicating

14   physical impairments and opined limitations.  *Id.* at 59.  It is unclear how these

15   objective findings do not support plaintiff's claims, particularly when the ALJ

16   credited Dr. Nagelberg's assessment.  *Id.* at 31.  As such, the ALJ's reason is not

17   supported by substantial evidence.

18        With respect to the mental impairments, the objective medical evidence

19   reflects that two treating physicians diagnosed plaintiff with PTSD and plaintiff

20   was treated with therapy and medication.  *Id.* at 652-64, 834, 1144, 1146.  As

21   discussed above, the ALJ failed to properly consider this evidence.  Whether the

22   objective medical history is sufficient to support plaintiff's alleged symptoms is

23

24        [10]   Plaintiff submitted several third party reports and letters to support his
     alleged functional limitations.  *See* AR at 84-85, 145-52, 167-68, 198-99.  The
25   court noticed that two of the letters, from Dr. Pearl Ross and Frank Lindsey,
     appear to be in plaintiff's own handwriting.  *Compare* AR at 84-85, 198-99 and
26   110-12.   But it appears that the letters were signed and adopted by Dr. Ross and
     Mr. Lindsey.  The court notes this only as a matter the parties may wish to address
27   on remand.

28

1   unclear on this record.  But because the ALJ must reconsider Dr. Selby's opinion

2   and the VA's determination on remand, the ALJ will also need to thereafter

3   reassess plaintiff's credibility in light of her reconsideration of the evidence of

4   mental impairment.

5        Second, the ALJ found that plaintiff received conservative treatment and his

6   symptoms were managed by medications.  AR at 31, 60.  *See Parra v. Astrue*, 481

7   F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient

8   to discount a claimant's testimony regarding severity of an impairment.").  With

9   respect to plaintiff's physical impairments, the ALJ's reason for discounting

10  plaintiff's credibility is not supported by substantial evidence.  Dr. Nagelberg

11  primarily treated plaintiff with physical therapy and chiropractic care.  *See, e.g.,*

12  AR at 263, 278, 281; *see also Tommasetti*, 533 F.3d at 1040 (describing physical

13  therapy and anti-inflammatory medication as conservative treatment).  But

14  contrary to the ALJ's findings, Dr. Nagelberg advised surgery on several

15  occasions.  *Compare id.* at 58 and 286, 301, 318.  Plaintiff did not receive surgical

16  treatment because the surgery was not authorized.  *Id.* at 286; *see Orn v. Astrue*,

17  495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be

18  a basis for an adverse credibility finding unless there was a good reason for not

19  doing so).

20       As for plaintiff's mental impairment, the record supports the ALJ's finding

21  that plaintiff's treatment, consisting of individual and group therapy and low-

22  dosage medication, was conservative.  AR at 652-64, 1144, 1146; *see Tommasetti*,

23  533 F.3d at 1040 (conservative treatment may be a clear and convincing reason for

24  discounting a claimant's credibility).

25       Finally, the ALJ found that plaintiff's daily activities were inconsistent with

26  his symptoms.  AR at 60; *see Morgan*, 169 F.3d at 599 (a plaintiff's ability "to

27  spend a substantial part of [her] day engaged in pursuits involving the

28  performance of physical functions that are transferable to a work setting" may be

1   sufficient to discredit her).  The ALJ noted plaintiff's ability to perform a full

2   range of household activities and volunteer on a regular basis.  AR at 60.  Plaintiff

3   testified that he could cook, wash dishes, do his laundry and take out the garbage,

4   but that he could no longer do household repairs or any of his prior hobbies such

5   as hiking and fishing.  *Id.* at 1170-71.  Plaintiff testified that he volunteered in a

6   scholarship program, which required an hour a day, and he collected donated

7   books from friends and brought them to the veteran center when he visited.  *Id.* at

8   1169-70.

9        "[T]he mere fact a plaintiff has carried on certain daily activities, such as

10  grocery shopping, driving a car, or limited walking for exercise, does not in any

11  way detract from her credibility as to her overall disability."  *Vertigan v. Halter*,

12  260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant does not need to be "utterly

13  incapacitated."  *Fair*, 885 F.2d at 603.  But if a claimant is "able to spend a

14  substantial part of his day engaged in pursuits involving the performance of

15  physical functions that are transferable to a work setting, a specific finding as to

16  this fact may be sufficient to discredit" him.  *Id.*  Here, the activities plaintiff

17  engaged in were not necessarily transferable to a work setting.  *See Vertigan*, 260

18  F.3d at 1050.  Plaintiff's ability to engage in these activities did not mean that he

19  could maintain attention and concentrate for the entire work day, work with others,

20  or deal with work stress.  As such, plaintiff's ability to perform these activities

21  does not support the ALJ's finding that plaintiff lacked credibility.

22       In short, although the ALJ provided some clear and convincing reasons

23  supported by substantial evidence for discounting plaintiff's credibility, most of

24  the reasons she gave were not supported by substantial evidence.

25                                        **V.**

26                          **REMAND IS APPROPRIATE**

27       The decision whether to remand for further proceedings or reverse and

28  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

1  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by

2  further proceedings, or where the record has been fully developed, it is appropriate

3  to exercise this discretion to direct an immediate award of benefits.  *See Benecke*

4  *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d

5  1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

6  turns upon their likely utility).  But where there are outstanding issues that must be

7  resolved before a determination can be made, and it is not clear from the record

8  that the ALJ would be required to find a plaintiff disabled if all the evidence were

9  properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96;

10  *Harman*, 211 F.3d at 1179-80.

11      Here, as set out above, remand is required because the ALJ erred in failing

12  to properly evaluate Dr. Selby's opinion, the disability determination of the VA,

13  and plaintiff's credibility.  The ALJ also failed to provide an RFC determination

14  consistent with her analysis.  On remand, the ALJ shall:  (1) reconsider the opinion

15  provided by Dr. Selby regarding plaintiff's mental impairments and limitations,

16  and either credit her opinion or provide specific and legitimate reasons supported

17  by substantial evidence for rejecting it; (2) reconsider the VA's disability

18  determination, and either credit it or provide persuasive, specific, and valid

19  reasons for rejecting it; (3) clarify her RFC determination; and (4) reconsider

20  plaintiff's subjective complaints with respect to his mental impairments and the

21  resulting limitations, and either credit plaintiff's testimony or provide clear and

22  convincing reasons supported by substantial evidence for rejecting them.  The ALJ

23  shall then proceed through steps four and five to determine what work, if any,

24  plaintiff is capable of performing.

25

26

27

28

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 7, 2012

SHERI PYM
United States Magistrate Judge

20